STEPHANIE S. CHRISTENSEN
Acting United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
KATHRYNNE N. SEIDEN (Cal. Bar No. 310902)
Assistant United States Attorney
General Crimes Section
     1200 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-0631
     Facsimile: (213) 894-0141
     Email:     kathrynne.seiden@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 21-00447-VAP |
| Plaintiff, | GOVERNMENT'S SENTENCING POSITION FOR DEFENDANT ANTHONY BROWN; DECLARATION OF KATHRYNNE N. SEIDEN |
| v. | |
| ANTHONY BROWN, aka "Kristen Funone" | Hearing Date: 7/25/2022 Hearing Time: 9:00 a.m. Location:   Courtroom of the Hon. Virginia A. Phillips |
| Defendant. | |

Plaintiff United States of America, by and through its counsel of record, the Acting United States Attorney for the Central District of California and Assistant United States Attorney Kathrynne N. Seiden, hereby files its sentencing position for defendant Anthony Brown.

This filing is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

//

//

1    The government respectfully reserves the right to file any

2  supplemental sentencing position that may be necessary.

3   Dated: July 5, 2022            Respectfully submitted,

4                                  STEPHANIE S. CHRISTENSEN
                                   Acting United States Attorney
5
                                   SCOTT M. GARRINGER
6                                  Assistant United States Attorney
                                   Chief, Criminal Division
7

8                                       /s/ Kathrynne N. Seiden
                                   _____
                                   KATHRYNNE N. SEIDEN
9                                  Assistant United States Attorney

10                                 Attorneys for Plaintiff
                                   UNITED STATES OF AMERICA
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

**I.   INTRODUCTION**

3        Defendant is a former Long Beach Police Department officer who
4   repeatedly distributed child pornography while on duty.  In September
5   2021, defendant was indicted for three counts of distribution of
6   child pornography and one count of possession of child pornography.
7   In March 2021, Defendant pled guilty to distribution of child
8   pornography.  As part of defendant's plea agreement, the government
9   agreed to dismiss the remaining counts.

10        On June 16, 2022, the United States Probation and Pretrial
11  Services Office filed its Presentence Investigation Report and
12  Recommendation Letter.  Therein, Probation calculated a total offense
13  level of 27 and a criminal history category of I, resulting in an
14  advisory Sentencing Guidelines range of 70 to 87 months' imprisonment
15  (with a 60 month statutory mandatory minimum term), a lifetime period
16  of supervised release, and a $25,000 to $250,000 fine.  Probation
17  recommended that defendant receive a sentence below that Guidelines
18  range: the statutory mandatory minimum of 60 months' imprisonment, a
19  lifetime period of supervised release, and a fine of $25,000.  The
20  government concurs with the majority of Probation's Guidelines
21  calculations, but respectfully disagrees with its recommendation.
22  Instead, the government requests that the Court sentence defendant to
23  a low-end Guidelines sentence of 70 months' imprisonment, a lifetime
24  period of supervised release, and a $25,000 fine.

25  **II.  STATEMENT OF FACTS**

26        In October 2019, while employed as a Long Beach Police
27  Department ("LBPD") officer, defendant set up an account with the
28  username "Kristen Funone" on the social media website MeWe for the

1  purpose of possessing and distributing child pornography, or child
2  sexual abuse material ("CSAM").  Dkt. 39 (Plea Agreement) ¶ 13.
3  Between October 2019 and May 2020, defendant regularly logged into
4  MeWe to engage in graphic sex chats and trade pornography with other
5  users.  Id.  When participating in these chats, defendant posed as
6  his 38-year-old wife and discussed participating in group sex acts,
7  including with his wife's then-19-year-old daughter, pictures of whom
8  he sent to other users.  Id.; Declaration of Sharon Lee ("Lee Decl.")
9  ¶¶ 2-4.  Defendant also discussed grooming a fictitious 13-year-old
10  daughter and eight-year-old niece to participate in the group sex
11  acts and graphically described the 13-year-old and eight-year-old
12  having sex with adult men, including in situations where they
13  protested.  Id.
14       Defendant also used his MeWe account to store and trade CSAM,
15  sometimes while he was on duty as a LBPD officer.  Plea Agreement
16  ¶ 13.  For example, on April 6, 2020, while on duty, defendant sent
17  another MeWe user an image of a 10- to 12-year-old female holding the
18  penis of an adult male and a video of a nude female, roughly seven to
19  ten years old, performing oral copulation on an adult male.  Id.
20  Additionally, defendant belonged to several groups in MeWe, including
21  "Daddy's Lil Princess," "Petite Dolls," and "small bodied girls."
22  Lee Decl. ¶ 2.  Defendant stored certain CSAM images to his MeWe
23  cloud folder multiple times; for example, defendant saved a
24  photograph of a nude 14- to 18-year-old to his folder seven times.
25  Id.  Some of the images stored in defendant's MeWe folder were of
26  females who appeared to be teenaged, but whose exact ages could not
27  be determined.  Id.  In reviewing the content of defendant's MeWe
28  account, law enforcement was only able to see images defendant sent

1    or stored; it was not able to read or see messages or images

2    defendant received from other users.  Id. ¶¶ 3-4.

3          On May 27, 2020, a LBPD detective called defendant and told him

4    that an account associated with his phone number had been used to

5    upload child pornography.  PSR ¶ 18.  The detective told defendant

6    that the investigation would be closed, but that if the detective

7    received another complaint related to defendant, both cases would be

8    presented for felony filing consideration.  Id.  Defendant did not

9    question why the detective was calling him and affirmed that he

10   understood.  Id.  The detective asked defendant if he would like

11   information for support groups and defendant confirmed he would look

12   for that information himself.  Id.  Later that day, defendant

13   conducted a factory reset of his phone, which deleted all data -- not

14   just the information stored on defendant's MeWe account --

15   accumulated on his phone to that point.  Id.

16   **III.  PRESENTENCE INVESTIGATION REPORT**

17         Based on the facts above, Probation determined that:

18   (1) defendant's base offense level is 22, under USSG § 2G2.2; (2) a

19   two-level increase applies because defendant possessed material

20   involving a prepubescent minor, under USSG § 2G2.2(b)(2); (3) a two-

21   level increase applies because defendant knowingly engaged in

22   distribution of child pornography, under USSG § 2G2.2(b)(3)(F); (4) a

23   two-level increase applies because defendant used a computer, under

24   USSG § 2G2.2(b)(6); (5) a two-level increase applies because

25   defendant's crime involved 10 to 150 images, under USSG

26   § 2G2.2(b)(7)(A); and (6) a three-level decrease applies because

27   defendant timely accepted responsibility, under USSG § 3E1.1(a)-(b).

28   PSR ¶¶ 24-38.  Accordingly, Probation calculated defendant's total

offense level as 27.  Id. ¶ 39.  Probation elected not to apply a two-level increase for obstruction of justice under USSG § 3C1.1. Id. ¶¶ 32-34.  Nonetheless, Probation noted that on the same day a detective told defendant that an account associated with his phone number had been used to upload child pornography, defendant conducted a factory reset of his smart phone.  Id.

Probation also determined that defendant has zero criminal history points, for a criminal history category of I.  Id. ¶ 45. Based on a total offense level of 27 and a criminal history category of I, Probation calculated defendant's Guidelines range as 70 to 87 months' imprisonment and a five-year to lifetime period of supervised release.  Id. ¶¶ 81, 84.

Probation identified no factors that would warrant a departure from the applicable Guidelines range.  Id. ¶ 95.  But Probation identified defendant's work history, minimal criminal history, and the "limited number of images and videos of child pornography found in comparison to a typical child pornography case" as factors that might warrant a downward variance.  Id. ¶ 96.  Relying on these factors, Probation recommended the statutory mandatory minimum term of imprisonment (60 months), a lifetime period of supervised release, and a $25,000 fine.  Recommendation Letter at 1-2, 7.

## IV.   70 MONTHS' IMPRISONMENT AND A LIFETIME PERIOD OF SUPERVISED RELEASE IS REASONABLE AND APPROPRIATELY TAILORED TO THE § 3553(A) FACTORS

The government agrees with Probation's calculations, but disagrees with its recommendation for a downward variance.  Instead, the government respectfully requests that the Court sentence defendant to 70 months' imprisonment, a lifetime period of supervised release, a $100 special assessment, and a $25,000 fine.  A low-end

1 Guidelines sentence and a lifetime period of supervised release is

2 sufficient but not greater than necessary to accomplish the goals set

3 forth in 18 U.S.C. § 3553(a).

**A.    Nature and Circumstances of the Offense and Defendant's
        History and Characteristics**

6    Defendant not only traded child pornography with other MeWe

7 users, but also engaged in disturbing conversations in which he posed

8 as his wife, sent strangers photos of his then 19-year-old

9 stepdaughter, and evinced a desire to groom unwilling minors to

10 participate in group sex acts, thus further expanding and encouraging

11 the market for the CSAM he distributed.  PSR ¶¶ 11-18; Lee Decl. ¶ 4.

12 He did those things while entrusted to protect the public.  Plea

13 Agreement ¶ 13.  In other words, defendant's sentence should account

14 for the serious nature of his crime.

15    Admittedly, defendant's history includes mitigating facts,

16 including that he is a longtime veteran of the LBPD.[1]  PSR ¶ 71.  But

17 that same fact is also aggravating.  As a LBPD officer, defendant was

18 entrusted with serving the public.  But over the course of at least

19 six to seven months, defendant repeatedly spent the hours he was

20 being paid to protect his community to instead victimize children by

21 trading child pornography online.  Id. ¶¶ 12-18.  He did so while

22 engaging in graphic conversations in which he fantasized about

23 further victimizing children by coercing them to have sex with adult

24 men against their will.  Id.; Lee Decl. ¶ 4.  A low-end Guidelines

25 sentence appropriately balances the fact that defendant dedicated a

---

[1] Probation notes that defendant is "retired."  PSR ¶ 71.
Defendant retired the day he was arrested by LBPD detectives for
possessing child pornography.  Lee Decl. ¶ 5.

5

significant portion of his life to public service with the fact that
he also abused his position of trust within the community. See 18
U.S.C. § 3553(a)(1).  Given that abuse of trust, a downward variance
is not warranted.

Furthermore, Probation's proffered justifications are
insufficient to support a downward variance.  Probation based its
recommendation on three facts: (1) defendant's employment history;
(2) his lack of criminal history, and (3) the fact that the "number
of child pornography images and/or videos found in his possession"
was minimal.  Recommendation Letter at 7.  None of those
justifications support a downward variance.  For the reasons already
stated, defendant's employment history is both mitigating and
aggravating, and his lack of criminal history is already factored
into calculating his Guidelines range.  PSR ¶¶ 45, 81.  Thus, neither
factor supports varying downward from that range.

Probation's only remaining justification for a downward variance
is the "minimal" number of child pornography images and videos found
in defendant's possession.  Recommendation Letter at 7.  That
argument would carry significantly more weight had the government
been able to accurately assess the number of images and videos in
defendant's possession.  But as Probation noted in the PSR, defendant
wiped his phone the day he learned that he was under investigation
for uploading child pornography.  PSR ¶ 18.  Defendant did not merely
"delet[e] all data related to the MeWe account," as Probation
suggests.  See id. ¶ 34.  Rather, he conducted a complete factory
reset of his phone, which precluded law enforcement from forensically
analyzing any of the "data that his smart phone had accumulated
before that day."  Id. ¶ 18.  As a longtime police officer, defendant

understood the process of forensically analyzing a phone during an investigation and knew that conducting a factory reset would preclude any such analysis.  And as a result of his conduct, the government was never able to assess what and how many images and videos defendant had in his possession -- only those he uploaded to his MeWe library.  Id.; Lee Decl. ¶ 3.

Because the government cannot say for certain that the materials defendant deleted contained additional evidence of defendant's crime, the government is not seeking application of a two-level enhancement for obstruction of justice.  But see United States v. King, 604 F.3d 125, 141 (3d Cir. 2010) (granting upward departure for obstruction of justice where defendant destroyed three hard drives containing evidence of child pornography); United States v. Pawlak, 935 F.3d 337, 353 (5th Cir. 2019) (granting upward departure for obstruction of justice where child pornography defendant took steps to download computer program designed to permanently delete his computer hard drive's contents); United States v. Schwartz, 698 Fed. App'x 799, 803 (6th Cir. 2017) (granting upward departure for obstruction of justice where defendant deleted account associated with storage and transfer of child pornography after he learned that an official investigation into his child pornography possession had begun).  But Probation's recommendation asks the Court to assume that defendant possessed no additional images or videos when he conducted that factory reset. Defendant should not get the benefit of an assumption that can only be made because of the steps he took to preclude any meaningful analysis of his phone.  The Court should not reward defendant's efforts to cover his tracks by varying downwards on that basis. Instead, it should sentence him to a low-end Guidelines sentence.

Finally, the government disagrees with the assessment that defendant "was never psychologically suited to become a police officer due to his particularly sensitive an[d] empathetic nature." PSR ¶ 63.  To the contrary, law enforcement officers should be empathetic to the plights of crime victims, and defendant's crime demonstrates a jarring insensitivity and distinct lack of empathy for society's most vulnerable victims: children who are sexually abused by the adults they trust, and who must then repeatedly relive that trauma for the sexual gratification of strangers like defendant. Defendant's purportedly "sensitive an[d] empathetic nature" does not warrant a downward variance below the Guidelines range.

### B.  Need for the Sentence To Protect the Public and Afford Adequate Deterrence

A within-Guidelines sentence and a lifetime period of supervised release is necessary to protect the public from further crimes and provide adequate deterrence to defendant and those who would emulate his crime.  Moreover, a lifetime period of supervised release is warranted to ensure that defendant never victimizes children again.[2] See 18 U.S.C. § 3553(a)(2).

---

[2]Probation also recommends a lifetime period of supervised release.  Still, Probation notes that defendant's hired psychologist "does not believe [defendant] suffers from any disorder of sexual deviancy, including pedophilia," and is not "at a high risk for future sexual offense[.]"  Id. ¶ 66.  But that psychologist based his report on a number of questionable assumptions, including that "[p]rior to his involvement in the offense, there is no evidence of pedophilic tendencies or any other pattern of sexual deviancy."  Id. ¶ 64.  That assumption is at odds with information collected during the investigation of defendant's crimes.  For example, LBPD detectives learned that in 2009, defendant texted a minor who was friends with defendant's then-girlfriend's son to invite him over to their house.  Lee Decl. ¶ 6.  Law enforcement spoke with the minor, who confirmed that he remembered the text message "had to do with [the minor] having sex" with defendant's then-girlfriend.  Id.  The minor then blocked defendant's number.  Id.

### C.   Need for the Sentence To Avoid Unwarranted Sentencing Disparities

Section 3553(a)(6) requires the Court to minimize sentencing disparities among similarly situated defendants.  One way of doing so is to correctly calculate the Guidelines range.  See United States v. Treadwell, 593 F.3d 990, 1011 (9th Cir. 2010) ("Because the Guidelines range was correctly calculated, the district court was entitled to rely on the Guidelines range in determining that there was no 'unwarranted disparity' . . ."); Gall v. United States, 552 U.S. 38, 54 (2007) ("[A]voidance of unwarranted disparities was clearly considered by the Sentencing Commission when setting the Guidelines ranges.").

Here, under the correctly calculated Guidelines range, other defendants "with similar records who have been found guilty of similar conduct" can expect to receive a sentence between 70 and 87 months' imprisonment.  18 U.S.C. § 3553(a)(6).  Defendant is not entitled to preferential treatment simply because he was a member of the law enforcement community.  Rather, defendant should receive the same sentence as other defendants who committed the same crime while in the same criminal history category.  See USSG § 5A.

## V.   FINE

The government agrees with Probation that defendant can afford to pay the minimum fine.  PSR ¶¶ 74-77; Recommendation Letter at 7.

## VI.  CONCLUSION

For the foregoing reasons, the government respectfully requests that this the Court impose a low-end Guidelines sentence of 70 months' imprisonment, a lifetime period of supervised release, a $100 special assessment, and a $25,000 fine.

1                   DECLARATION OF SHARON LEE

2        I, Sharon Lee, declare as follows:

3        1.    I am a Special Agent with the United States Department of

4   Homeland Security, Homeland Security Investigations.  I am the case

5   agent assigned to United States v. Anthony Brown, No. CR 21-447-VAP.

6   I am familiar with the reports and other documents related to this

7   case.  I have knowledge of the facts set forth herein and could and

8   would testify to those facts fully and truthfully if called and sworn

9   as a witness.

10       2.    I have reviewed the data received from a search served on

11  MeWe for the account associated with defendant Anthony Brown's cell

12  phone number.  That data reflects that defendant was a member of

13  various MeWe groups, including groups called "Daddy's Lil Princess,"

14  "Petite Dolls," and "small bodied girls."  The data also reflects

15  that defendant had at least six different images and one video of

16  minors engaged in sexually explicit conduct stored in his MeWe photo

17  library.  Some of these images were saved multiple times -- for

18  example, there are seven copies of a photograph of a nude 14- to 16-

19  year-old girl doing a backbend.  Defendant's MeWe photo library also

20  contained an additional ten images depicting nude or partially nude

21  females who appeared to be teenaged, but whose precise ages were not

22  discernible.  Defendant's MeWe photo library also contained numerous

23  images of his wife's real 19-year-old daughter, including in a

24  bathing suit.

25       3.    On September 3, 2021, I spoke with a representative from

26  MeWe who explained how images are collected in a MeWe user's photo

27  library.  The representative explained that images are not passively

28  added to the photo folder; rather, all images in the photo folder are

1  images sent or uploaded by the user.  The representative explained
2  that receiving an image will not place it in the folder unless the
3  user downloads and then sends the photo.

4       4.   The data law enforcement received from MeWe reflects only
5  chats and images sent by defendant's account to other users; it does
6  not reflect what chats or images defendant received from other users.
7  In his chats with other users, defendant often posed as his wife and
8  said he had a 18-year-old daughter, a 13-year-old daughter, and
9  custody of an 8-year-old niece.  Defendant frequently sent other
10 users photographs of his wife's real 19-year-old daughter.  In many
11 of his chats with other users, defendant graphically discussed
12 himself (posing as his wife) having sex with those users and
13 including both daughters and the niece, including against the minors'
14 protestation.  Based on the investigation, I am aware that the 13-
15 year-old daughter and 8-year-old niece defendant described in his
16 chats with other MeWe users are fictional and that the 18-year-old
17 daughter appears to be based on defendant's wife's real 19-year-old
18 daughter.

19      5.   On February 10, 2021, Long Beach Police Department ("LBPD")
20 detectives arrested defendant for possession of Child Sexual Abuse
21 Material.  Defendant retired that day.

22      6.   Based on my review of LBPD's reports, I am aware that
23 during their investigation, LBPD detectives learned that in 2009,
24 defendant texted a minor who was friends with his then-girlfriend's
25 son to invite him over to their house.  LBPD spoke with the minor,
26 who confirmed that he remembered the text message "had to do with
27 [the minor] having sex" with defendant's then-girlfriend.  The minor
28 then blocked defendant's number.

1    I declare under penalty of perjury under the laws of the United

2 States of America that the foregoing is true and correct and that

3 this declaration is executed at Los Angeles, California, on July 5,

4 2022.

5

6                                      _____
                                        SHARON LEE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28